# EXHIBIT C

# LIBERTY SURPLUS INSURANCE CORPORATION

**Liberty**
Surplus Insurance
Corporation

## PRODUCT RECALL INSURANCE POLICY

In Witness Whereof, we have caused this policy to be signed by its President and Secretary.

PRESIDENT
Christopher L. Peirce

VICE PRESIDENT and SECRETARY
Mark C. Touhey



# Product Recall Insurance Policy

## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")
175 Berkeley Street, Boston, MA  02116
Toll-free: 1-800-677-9163

> The Insurer is a surplus lines insurer, is not licensed by the State and is subject to limited regulation.  In the event of insolvency of the Insurer, the insurance is not covered by the State's guaranty fund.  This policy may be subject to surplus lines taxes, stamping fees, surcharges, and certain surplus lines reporting requirements mandated by state regulations.  The Surplus Lines Broker is responsible for the disclosure of all related taxes, surcharges, and fees.  The Surplus Lines Broker is also responsible for the applicable surplus lines reporting requirements including but not limited to the submission of diligent search forms.

## DECLARATIONS

**POLICY NO.:**   GCM3000215-0415
**RENEWAL OF:**   GCM3000215-0314

**ITEM I.**   **NAMED INSURED:**

Green Technology Lighting Corporation
7900 W. 78th Street, Suite 430
Edina, Minnesota  55439

**ITEM II.**   **POLICY PERIOD:**

From:  November 30, 2015        To:  November 30, 2016
12:01 A.M. Standard Time at the address in Item I.

**ITEM III.**   **LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| (a) | Product Recall Expenses | |
| | $3,000,000 | Each Covered Incident |
| | $3,000,000 | Aggregate Limits of Insurance |
| (b) | Product Recall Liability | |
| | NOT COVERED | Each Covered Incident |
| | NOT COVERED | Aggregate Limits of Insurance |
| (c) | Policy Aggregate | |
| | $3,000,000 | Each Covered Incident |
| | $3,000,000 | Aggregate Limits of Insurance |

**ITEM IV.**   **SELF INSURED RETENTION:**

| | | |
|---|---|---|
| (a) | Product Recall Expenses | |
| | $50,000 | Each Covered Incident |
| (b) | Product Recall Liability | |
| | NOT COVERED | Each Covered Incident |

**ITEM V.**   **INSURED PRODUCTS:**

CFL and LED bulbs with Polaroid branding



# Product Recall Insurance Policy

| ITEM VI. | **ENDORSEMENT(S) EFFECTIVE AT INCEPTION:** |
|---|---|
| | See Schedule of Endorsements |

> This policy may be subject to surplus lines taxes, stamping fees, surcharges, and certain surplus lines reporting requirements mandated by state regulation. The Surplus Lines Broker is responsible for the disclosure of all related taxes, surcharges, and fees. The Surplus Lines Broker is also responsible for the applicable surplus lines reporting requirements including but not limited to the submission of diligent search forms.

| ITEM VII. | **PREMIUM:** | |
|---|---|---|
| | Policy Premium: | $11,000 |
| | Terrorism Risk Insurance Act Premium Included At: | $0 |
| | **Total Policy Premium** (including state surcharges): | **$11,000** |

| ITEM VIII. | **BROKER NAME AND ADDRESS:** |
|---|---|
| | Rachael Thompson |
| | Crouse & Associates |
| | 650 California Street, Suite 1100 |
| | San Francisco, CA 94108 |

PRESIDENT
Christopher L. Peirce

VICE PRESIDENT and SECRETARY
Mark C. Touhey

February 10, 2016
Date



## Product Recall Insurance Policy

### LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")
175 Berkeley Street, Boston, MA 02116
Toll-free: 1-800-677-9163

### POLICY TERMS

Throughout this Policy the words **you** and **your** refer to the insureds covered by this Policy. The words **we, us** and **our** refer to the company providing this insurance. Words appearing in bold have the respective meanings assigned to them in the Definition section of this Policy.

In consideration of the premium paid, and in reliance on the warranties and representations made in the application and the statements and materials furnished to **us** in conjunction with such application, **you** and **we** agree as follows:

**SECTION I.    COVERAGE AGREEMENTS**

**A. <u>COVERGE AGREEMENT A:  Product Recall Expense Coverage</u>**

**We** will, subject to the terms and conditions of this Policy and excess of any applicable **self insured retention,** reimburse **you** for **product recall expenses** resulting directly from a **covered incident,** provided that such **covered incident** takes place in the **coverage territory,** and the earlier of the initial notification to **us** or general publication of such **covered incident** takes place during the **policy period.**

**B. <u>COVERAGE AGREEMENT B:  Product Recall Liability Damages Coverage</u>**

**We** will, subject to the terms and conditions of this Policy and excess of any applicable **self insured retention,** reimburse **you** for **product recall liability damages** resulting directly from a **covered incident,** provided that such **covered incident** takes place in the **coverage territory,** and the discovery or the initial notification to us or general publication of such **covered incident** takes place during the **policy period.**

**SECTION II.    LIMITS OF INSURANCE**

A. The Limits of Insurance shown in the Declarations are the most **we** will pay regardless of the number of **Insured's, Claims,** Suits, or **Covered Incidents.**

B. The Limits of Insurance shown in the Declarations will apply in excess of the applicable **self insured retention(s).**

C. Subject to II. B. above, the **Policy Aggregate** shown in the Declarations is the most **we** will pay for the sum of all **product recall expenses** under Coverage Agreement A and all **product recall liability damages** including **defense costs** under Coverage Agreement B all combined.

D. Subject to II. C. above, the **Product Recall Expenses** Aggregate Limit shown in the Limits of Insurance section of the Declarations is the most **we** will pay for the sum of all **product recall expenses** applicable to all **product**



GCM3001 (09/15)



# Product Recall Insurance Policy

recall expenses. The most we will pay for the sum of all **product recall expenses**, in excess of the **self insured retention**, as a result of any one **covered incident**, is the applicable **Product Recall Expenses Each Covered Incident Limit** that is shown in the Limits of Insurance section of the Declarations. All **product recall expenses** resulting from the same omission, introduction, or error will be considered as arising out of one **covered incident**.

E.  Subject to II. C. above, the **Product Recall Liability** Aggregate Limit shown in the Limits of Insurance section of the Declarations is the most **we** will pay under Insuring Agreement B for the total of all **compensatory damages** and all **defense costs** for **product recall liability damages**, in excess of the **self insured retention**, as a result of any one **covered incident**, is the applicable **Product Recall Liability** Each Covered Incident Limit that is shown in the Limits of Insurance section of the Declarations. All **product recall liability damages** and **defense costs** arising from the same omission, introduction, or error will be considered as arising out of one **covered incident**.

F.  The Limits of Insurance of this Policy apply separately to each consecutive annual period. Any policy period extension will not increase any of the limits of Insurance.

G.  **Consultant and advisor costs** are not subject to the Limits of Liability stated in the Declarations and will have no maximum monetary limit. The **consultant and advisor costs** are limited to a period of 12 months from the date of the **covered incident**. The Self Insured Retention shall not apply to **consultant and advisor costs**.

## SECTION III.    SELF INSURED RETENTION

The Limits of Insurance for each of the coverages provided by this Policy will apply in excess of the applicable **self insured retention(s)** shown in the Declarations. With respect to each circumstance that results in a **covered incident**, **you** will be responsible for the applicable **self insured retention**. Should a **covered incident** result in Coverage under both Coverage Agreement A: Product Recall Expense Coverage and Coverage Agreement B: Product Recall Liability Damages Coverage, the applicable **self insured retentions** will apply separately to the **product recall expense** and to the **product recall liability damage**. **We** will be responsible, subject to the Limits of Insurance shown in the Declarations, for the **product recall expense** and/or **product recall liability damages** in excess of each applicable **self insured retention**.

## SECTION IV.    DEFINITIONS

A.  **Bodily injury** means physical injury or sickness or disease sustained by any person, including death resulting from any of the foregoing at any time.

B.  **Claim** means a written demand received by **you** seeking a remedy and alleging liability on **your** part for **product recall liability damages** to which this insurance applies.

C.  **Compensatory damages** means the payment amount limited to commercial economic loss, and does not include liquidated, punitive or penalty damages.

D.  **Consultant and advisor costs** refer to the reasonable and necessary fees and costs of **our** approved independent crisis management, security or public relations consultants or advisors for the purpose of responding to a **Covered Incident**.

GCM3001 (09/15)



# Product Recall Insurance Policy

E. **Coverage Territory** is anywhere in the world.

F. **Covered incident** means the recall, removal, recovery of possession or control, withdrawal or disposal of, or purposeful destruction of **your product(s)** from or by a distributor, purchaser, retailer, wholesaler, or user of **your product(s)** solely because the use or consumption thereof has resulted in **bodily injury** or **property damage**, or because the use or consumption thereof poses actual and imminent danger of resulting in **bodily injury** or **property damage**.

G. **Defense costs** means reasonable and necessary fees for: service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; cost of investigation services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; and any similar fee, cost or expense; provided, however, defense costs shall not include **our** or **your** general overhead, the salary or benefits allocable to any of **our** or **your** employees, or the fees of any attorney who is **our** or **your** employee or under **our** or **your** permanent retainer.

H. **Insured** means the Named Insured set forth in the Declarations. Furthermore:

   1. If the Named Insured includes a limited liability company, then the Members of such limited liability company are **insureds**, but only with respect to the conduct of such limited liability company's business, and the Managers of such limited liability company are **insureds**, but only with respect to their duties as Managers of such limited liability company;

   2. If the Named Insured includes a corporation, then its stockholders are insureds, but only with respect to their liability as stockholders.

   3. **Your** employees, executive officers and directors are **insureds**, but only with respect to their duties as **your** employees, executive officers or directors.

   No person or organization is an **insured** with respect to any current or past partnership, joint venture or limited liability company that is not part of the Named Insured.

I. **Policy aggregate** means the amount set forth as such in the Declarations, which is the most **we** will pay, in the aggregate, pursuant to all Coverages provided by this Policy.

J. **Policy period** means the period set forth in the Declarations, or any shorter period resulting from the cancellation or termination of this Policy.

K. **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including without limitation smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, and **waste**.

L. **Product recall expense** means any of the following reasonable and necessary costs, provided such costs are incurred during the 12 month period commencing on the first day **you** become aware of the applicable **covered incident**:

   1. costs to notify others of such **covered incident**, including but not limited to print, radio, television and internet notifications;

# Product Recall Insurance Policy


Liberty
Surplus Insurance
Corporation

2. costs to recover **your product(s)** back to you from any purchaser, distributor, or user including handling charges;

3. costs to dispose of or destroy **your product(s)**, less any salvage or scrap value recovery, but only to the extent such disposal or destruction exceeds **your** standard disposal or destruction methods and is necessary to avoid **bodily injury** or **property damage;**

4. costs to rent additional temporary warehouse or storage space;

5. costs to utilize personnel other than **your** employees to assist with such **covered incident**

6. costs for wages including overtime if any paid to **your** non-exempt hourly regular employees for work devoted exclusively to such **covered incident;** and

7. costs incurred by such personnel and/or **your** such employees, including without limitation transportation and accommodations costs, in connection with such **covered incident**.

M. **Product recall liability damages** means any sums that **you** become legally obligated to pay as **compensatory damages** and **your defense costs** resulting from the investigation, negotiation, settlement or defense of a **claim** or **suit**.

N. **Property damage** means physical injury to or destruction of tangible property other than **your product(s).**

O. **Self insured retention** means the amount(s) set forth in the "Self Insured Retention" section of the Declarations.

P. **Suit** means a civil proceeding seeking **product recall liability damages** to which this insurance applies, including without limitation any arbitration proceeding or other alternative dispute resolution proceedings seeking **product recall liability damages** and to which **you** must submit or do submit with **our** consent.

Q. **Waste** includes materials to be recycled, reconditioned, or reclaimed.

R. **Your product(s)** means those goods and products (excluding real property) shown in the Covered Products section in the Declarations, including containers (other than vehicles), materials, parts, or equipment furnished in connection therewith; and any property of others of which **your product(s)** form a part thereof; but only once **you** have released physical possession of such goods or products to others. **Your product(s)** does not include vending machines or other property rented to or located for the use of others.

## SECTION V.   EXCLUSIONS

A. Coverage Agreement A does not apply to **product recall expense:**

1. arising out of a decrease in product sales subsequent to the publication of a **covered incident;**

2. involving the repair, reconditioning, decontamination of or other treatment of the recalled products to render them marketable;

3. arising out of a recall of any competitor's product that is similar to **your product(s);** or



# Product Recall Insurance Policy

   4.   to recalibrate, retool, design, or redesign any product or equipment.

B.   Coverage Agreements A and B do not apply to **product recall expense** or **product recall liability damages** arising directly or indirectly:

   1.   out of **your** intentional act or omission that **you** knew or should reasonably have known could reasonably be expected to lead to a **covered incident**;

   2.   out of the natural deterioration, decomposition, or transformation of chemical structure or appearance except as a result of error or omission in the manufacture of **your product(s)**;

   3.   from **your** dishonest, willful, fraudulent, or criminal or malicious act, error, or omission;

   4.   out of any pre-existing condition, fact, circumstance or situation that **you**, prior to the inception of this Policy, knew or should  have known could reasonably be expected to cause, lead to or result in a **covered incident**;

   5.   based on the sale of **your product(s)** in any jurisdiction after **you** knew or should reasonably have known that **your product(s)** or similar products had been banned or declared unsafe by the regulatory authority(s) of that jurisdiction;

   6.   out of any testing for, monitoring of, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to or assessing the effects of **pollutants**;

   7.   out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation **you** may have to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust;

   8.   out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation to indemnify any party because of damages arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form;

   9.   out of the presence, ingestion, inhalation, or absorption of, or any exposure to, lead in any form or products containing lead or leaded materials;

   10.   out of fines or penalties assessed by any governmental agency or authority, or the multiplied portion of damages;

   11.   out of nuclear reaction or nuclear radiation or radioactive contamination, in each case whether controlled or uncontrolled, or resulting from any act or condition incident thereto;

   12.   as a result of or in connection with war (including without limitation civil war, insurrection, any act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution), whether declared or undeclared, or any act or condition incident thereto;

GCM3001 (09/15)



# Product Recall Insurance Policy

13. from any **bodily injury** or **property damage**, or for any emotional distress or mental anguish (whether or not suffered in conjunction with physical injury, sickness or disease);

14. from any **claim** or **suit** made or brought by or on behalf of any **insured(s)** against any other **insured(s)**; or

15. out of the removal, recovery, monitoring, or remediation of any medical product that has been implanted in a human being or animal.

16. out of the failure of **your product(s)** to pass any microbiological or chemical testing under **your** Hazard Analysis Critical Control Point (HACCP) plans or Good Manufacturing Practices (GMP) or Standard Operating Procedures (SOP), prior to the distribution or release of **your product(s)**;

17. out of or from, or in any way relating to, **your product(s)** associated with clean-up, remediation, containment, removal, or abatement, caused directly or indirectly, in whole or in part, by any form of Avian Influenza Virus or by any form of Transmissible Spongiform Encephalopathy (TSE), regardless of any other cause, event, material or product that contributed concurrently or in any sequence to such **product recall expense** or **product recall liability damages**.

18. out of bio-engineered, genetically engineered, or genetically modified ingredients or products used or alleged to have been used in the manufacture or creation of **your product(s)** unless such process as applied to **your product(s)** is approved by the relevant regulatory authorities;

19. out of hormone treatment of any of **your product(s)** or hormone treatment of any ingredients or products used or alleged to have been used in the manufacture or creation of **your product(s)** unless such process as applied to **your product(s)** is approved by the relevant regulatory authorities;

20. out of irradiation of any of **your product(s)** or irradiation of any ingredients or products used or alleged to have been used in the manufacture or creation of **your product(s)** unless such process as applied to **your product(s)** is approved by the relevant regulatory authorities;

21. out of **your product(s)** containing any quantity of dioxin or any quantity of dioxin-containing materials;

22. out of carcinogenic contamination regardless of whether such carcinogens are shown to have other non-carcinogenic effects;

23. out of loss to land (including land on which property is located), water, or growing crops or lawns; crop failure; or livestock; or

24. out of the failure by any party other than the **insured** to adhere to procedures prescribed by the **insured** regarding the storage, consumption or use of **your product(s)**.

**SECTION VI.   GENERAL CONDITIONS**

A.  DUTIES:

1.  In the event of a **covered incident**, whether or not such **covered incident** appears likely to involve this Policy, written notice must be given by or for **you** to **us**. Such notice shall contain information and details





# Product Recall Insurance Policy

sufficient to identify **you** and the time, place, and circumstances of the **covered incident**, and an estimate of the **product recall expense** and/or **product recall liability damages** likely to result. **You** must promptly take all reasonable steps to minimize any applicable expenses, costs, or damages.

2. If a **claim** or **suit** is made or brought, **you** must:
   a. immediately record the specifics of such **claim** or **suit** and the date received;
   b. notify **us** as soon as practicable during the **policy period** or up to 90 days past the Policy expiration. Such notice shall contain information and details sufficient to identify **you** and the time, place, and circumstances of the **covered incident**, and an estimate of the **product recall expense** and/or **product recall liability damages** likely to result. **You** must promptly take all reasonable steps to minimize any applicable expenses, costs, or damages;
   c. immediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with such **claim** or **suit**; and
   d. authorize **us** to obtain records and other information; and
   e. cooperate with **us** in the investigation, settlement or defense of such **claim** or **suit**.

3. **You** will file a detailed, sworn Statement of Loss with **us** as soon as practicable after the date of loss, but in no event more than twelve (12) months after initial notice to the Company of the **Covered Incident**.

B. DEFENSE: **You** have the right and duty to defend and contest any claim or suit. **We** have the right to participate with you in the defense and settlement of any claim or suit that appears reasonably likely to involve us, including but not limited to effectively participating in the negotiation of any settlement.

**You** will not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **defense costs** without the prior written consent of **us** as a condition precedent to our liability for loss arising out of any **claim** or **suit**. Only those settlements, stipulated judgments and defense costs which have been agreed to by us shall be recoverable as loss under the terms of this **Policy**. Our consent shall not be unreasonably withheld.

We have no duty to defend **you** against any **claim** or **suit** within the **self insured retention**, but **we** do have the right, at **our** own expense, to participate with **you** in the investigation, negotiation, settlement, and defense of any such **claim** or **suit**. **We** have the right and duty to participate with **you** in the investigation, negotiation, settlement, and defense of any **claim** or **suit** above the self insured retention, unless the limits of insurance applicable to the insuring agreements have been exhausted

C. APPRAISAL: In the event of a disagreement, the first **Named Insured** and we shall both select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire and failing for 15 days to agree on such umpire, then upon our or the first Named Insured's request, such umpire shall be selected by a judge of the State of New York. The venue will be in the State of New York. The first Named Insured and we will submit our cases to the appraisers and the umpire within 30 days of the appointment of the umpire. An itemized award in writing of any two appraisers will determine the amount of loss. **You** and we will each pay our respective chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not be held to have waived any of our rights by any act relating to the appraisal.

D. ASSIGNMENT: Neither this Policy nor the rights and obligations under this Policy may be assigned or transferred without **our** prior written consent.

GCM3001 (09/15)



# Product Recall Insurance Policy

E. **AUTHORIZATION:**  By acceptance of this Policy, the Named Insured agrees to act on behalf of all other **insureds** with respect to the giving or receiving of any notice relating to this Policy, including without limitation any notice involving cancellation, non-renewal, or conditional renewal, and, by their acceptance of the coverage provided by this Policy, all such other **insureds** agree that such first Named Insured will act on their behalf.

F. **BANKRUPTCY:**  **Your** bankruptcy or insolvency will not relieve **us** of any obligation under this Policy or increase any of **our** obligations under this Policy.

G. **CANCELLATION:**  This Policy may be canceled by surrender of this Policy to **us** or any of **our** authorized agents or by mailing to **us**, at **our** address shown above, written notice stating when thereafter the cancellation will be effective.  **We** may cancel this Policy by mailing to the first Named Insured, at the address shown in the Policy, written notice stating when, not less than 60 days (ten days for nonpayment of premium) thereafter, the cancellation will be effective.  Proof of mailing of such notice will be sufficient proof of notice.

The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **policy period**.  Delivery of any such written notice will be equivalent to mailing.  If the first Named Insured cancels, earned premium will be computed in accordance with the customary short rate table and procedure.  If **we** cancel, earned premium will be computed pro rata.  Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

H. **CHANGES:**  Notice to any agent or knowledge possessed by any agent or by any other person will not effect a waiver or a change in any part of this Policy or stop **us** from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by a signed endorsement issued by **us** to form a part of this Policy.

I. **ARBITRATION:**  Should any dispute arise between **you** and **us** under this Policy which cannot be settled amicably, the matter in dispute will be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen who will act as chairman of the proceedings, or such other procedure as is currently in accordance with the rules of the American Arbitration Association.  Should either **you** or **we** fail to appoint an arbitrator or should the two arbitrators so chosen fail to agree on a third arbitrator, then the parties to the arbitration will apply to the appropriate federal or state court in New York, NY for the appointment of such arbitrator. The arbitration will be conducted in a New York venue and be subject to New York law.  The decision of the arbitrators, or that of any two of them, will be final and conclusive of all disputes and controversies between **you** and **us** relating to the matters in issue.  No award of the arbitrators or judgment of any court with respect to any award, dispute or controversy will be entered in an amount exceeding the applicable limits set forth in this Policy.

J. **CONCEALMENT OR FRAUD:**  This entire Policy will be void if, whether before or after a **covered incident** occurs or a **claim** or **suit** is first made or brought, **you** have willfully concealed or misrepresented any fact or circumstance material to the granting of coverage under this Policy.

K. **CONFIDENTIALITY:**  **You** will use all reasonable efforts not to disclose the existence of this Policy, except as may be required by law.

GCM3001 (09/15)



# Product Recall Insurance Policy

L. **COOPERATION:** You must cooperate with us and offer all reasonable assistance in the investigation of **covered incident(s)** and in the investigation, negotiation, defense, and settlement of claims or suits. **You**, as often as may be reasonably be required, will exhibit to any person designated by **us** all affected insured product(s) whether salvageable or otherwise, and will submit to examinations under oath by any person named by **us**, and subscribe the same; and, as often as may reasonably be required, will produce for examination all books of account, vouchers, bills, invoices, schedules, accounting information, and any documentation relating to your calculation of its **loss**, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by **us** or **our** representative, and will permit extracts and copies thereof to be made.

M. **DUE DILIGENCE:** **You** must use due diligence and assist **us** in doing all things reasonably practicable to avoid and mitigate any loss.

N. **OTHER INSURANCE:** The insurance provided under this Policy will be excess over any other valid and collectible bond or insurance. If **you** have other insurance against a loss covered by this Policy that purports to be excess of this insurance, **we** will not be liable under this Policy for a greater proportion of such loss and claims expenses than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of insurance of all valid and collectible insurance against such loss. If **you** have other insurance provided by a Liberty Mutual Insurance member company against a loss covered by this Policy, the maximum Limit of Insurance under all policies will not exceed the highest applicable Limit of Insurance available under any one Policy.

O. **PREMIUM AUDIT:** **We** will compute all premiums for this Policy in accordance with **our** rules and rates. If the premium set out in the Declarations is adjustable and is so endorsed to the Policy then the premium shown in this Policy is a deposit premium only. At the close of each audit period (period to be determined by endorsement) **we** will compute the earned premium for that period.

   1. Audit premiums are due and payable 30 days after notice of the adjustment to the first Named Insured.

   2. **You** must keep records of the information **we** need for premium computation, and promptly send **us** copies at such times as **we** may request.

P. **EXAMINATION:** **We** may examine and audit **your** books and records at any time during the **policy period** and within three years after the final termination of this Policy, as far as they relate to this Policy. Any premium due for exposures that exist but were not reported will be determined by **our** audit; however, this does not constitute a waiver of the section above entitled "Premium Audit".

Q. **INSPECTION:** **We** shall be entitled and permitted, but not obligated, to inspect **your** premises, products, and/or operations at any time during reasonable business hours, or to have **our** representatives do so on **our** behalf. No such inspection, and no feedback or report relating thereto, shall be interpreted as constituting any approval or opinion with respect to any matter concerning this policy or with respect to such premises, products, and/or operations.

R. **VIOLATIONS OF APPLICABLE LAW:** Notwithstanding the definition of **coverage territory** if coverage for a **claim** under this Policy is in violation of any applicable economic, trade or other sanction or law, including without limitation any sanction administered or enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that **claim** will be null and void.



# Product Recall Insurance Policy

S. **SUBROGATION:** In the event of any payment under this Policy, **you** will transfer to **us** all your rights to recovery, from any person or organization, of any of those amounts paid. **You** will do whatever else is necessary to secure such rights for **us**. **You** will do nothing to prejudice such rights. Any amounts recovered in excess of **our** total payment will be restored to **you**, less the cost to **us** of the recovery.

T. **VOLUNTARY PAYMENTS:** **You** will not voluntarily enter into any settlement, or make any payment or assume any obligation other than amounts within the **self insured retention** unless in response to an emergency, without **our** consent, which shall not be unreasonably withheld, except at **your** own cost.

U. **CHOICE OF LAW AND FORUM:** The construction, validity and performance of this Policy will be governed by the laws of the United States and the State of New York without giving effect to provisions regarding choice of law. All claims and disputes will be brought for adjudication either in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

V. **SALVAGE:** Any salvage or other recovery, after expenses incurred in salvage or recovery is deducted, will accrue entirely to **our** benefit until any sum paid by **us** has been recovered. In case of damage to property bearing a brand, trademark, proprietary designation, or which in any way carries or implies the guarantee or the responsibility of **you** the salvage value of such damaged property will be determined after removal in the customary manner of all such brands, trademarks, proprietary designations or other identifying characteristics, the costs of which will be borne by **you**. **Your** goodwill and public image will be considered in determining whether any **insured product(s)** should be involved in salvage recovery. **Our** right to salvage will not be unreasonably restricted by **you**. **You** will have full right to the possession of all goods involved in any **loss** under this Policy and will retain control of all damaged goods. There can be no abandonment of any property to **us**.

W. **ADDITIONAL EXPOSURES:** **You** will give **us** written notice within ninety (90) days of any potential additional exposure arising from:

1. Consolidation or merger with; or

2. Acquisition of the majority stock ownership of; or

3. Acquisition of the assets of;

any other entity whose revenues are in excess of ten percent (10%) of **your** gross revenue as of the effective date of such consolidation, merger, or acquisition.

**We** may elect to accept or reject such additional exposure. If the additional exposure is rejected, it will remain covered only until the **insured** is notified in writing of the rejection.

If **we** accept the additional exposure, **you** will pay **us** additional premium as may be required, computed from the effective date of such consolidation, merger or acquisition, to the end of the current Policy Period unless otherwise specifically requested.

No claim arising out of the additional exposure will be covered unless at the time **you** gave notice thereof to **us**, did not know nor could reasonably have been expected to know of the Insured Event giving rise to the claim.

**Product Recall Insurance Policy**



PRESIDENT
Christopher L. Peirce

VICE PRESIDENT and SECRETARY
Mark C. Touhey

This Policy shall not be valid unless signed at the time of issuance by our authorized representative on the Declarations page of the Policy.

# Product Recall Insurance Policy



## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

## SCHEDULE OF ENDORSEMENTS

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Form Name | Endorsement No. |
|---|---|---|
| TRIA-E002-0315 | Cap on Losses from Certified Acts of Terrorism | 1 |
| TRIA-N004-0315 | Disclosure – Terrorism Risk Insurance Act | 2 |
| OFAC 08/09 | U.S. Economic and Trade Sanctions Clause | 3 |
| SC-9 (03/15) | Service of Suit – Minnesota | 4 |
| GCM3024 (05/09) | Fully Earned Premium | 5 |

GCM0001 (09/08)



# Product Recall Insurance Policy

## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

### ENDORSEMENT NO. 1

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the above captioned policy.

**A.  Cap on Certified Act of Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.  Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy.



TRIA-E002-0315

Includes copyrighted material of Insurance Services Office, Inc., with its permission

## Product Recall Insurance Policy



## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

### ENDORSEMENT NO. 2

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DISCLOSURE – TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act.  If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown in the Declarations, Declarations Extension Schedule or elsewhere by endorsement in your policy.

**Federal Participation In Payment Of Terrorism Losses**

If an individual insurer's losses from certified acts of terrorism exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for the Federal Share  of losses paid in excess of the deductible,  but only if aggregate industry losses from such  acts exceed  the "Program Trigger".

The Federal Share and Program Trigger by calendar year are:

| Calendar Year | Federal Share | Program Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

| 1 | 2 |
|---|---|

TRIA-N004-0315

# Product Recall Insurance Policy



**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion.  Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion.  In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



**Product Recall Insurance Policy**

## LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

### ENDORSEMENT NO. 3

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.  Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.



OFAC 08/09



# Product Recall Insurance Policy

## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

### ENDORSEMENT NO. 4

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT CLAUSE – MINNESOTA

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

Liberty Surplus Insurance Corporation hereby appoints the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company furthermore designates Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113 as the agent to whom a copy of the Service of Process should be forwarded by the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the State of Minnesota. A copy of any process, "suit", complaint or summons should be sent to Dexter R. Legg, Secretary, Liberty Surplus Insurance Corporation, 175 Berkeley St., Boston, MA 02116.

**Product Recall Insurance Policy** 

# Product Recall Insurance Policy



## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

### ENDORSEMENT NO. 5

| | |
|---|---|
| **Effective Date:** | November 30, 2015 |
| **Policy Number:** | GCM3000215-0415 |
| **Issued To:** | Green Technology Lighting Corporation |

### FULLY EARNED PREMIUM

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

The total premium shown on the Policy Declarations is the minimum premium for this policy and is not subject to pro-rate, or less than pro-rate adjustment, in the event of cancellation of this insurance by the first **Named Insured.**

Cancellation of this insurance for nonpayment of premium is considered a request by the first **Named Insured** for cancellation of this insurance and will activate this fully earned provision.

All other terms, conditions, and exclusions of this Policy will remain unchanged.

GCM3024 (05/09)