UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREEN TECHNOLOGY LIGHTING CORP., <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY SURPLUS INSURANCE CORP., LIBERTY INSURANCE UNDERWRITERS INC., INSURE IDAHO, LLC, and CROUSE AND ASSOCIATES INSURANCE SERVICES OF NORTHERN CALIFORNIA, INC., <br><br> Defendants. | Case No. 1:17-cv-00432-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

# I. OVERVIEW

Two of the four Defendants in this case, Liberty Surplus Insurance Company and Liberty International Underwriters Inc. (collectively "Liberty"), move to transfer this case to the United States District Court for the Southern District of New York pursuant to a forum-selection clause in a contract between Liberty and Plaintiff Green Technology Lighting Corp. ("GTLC"). Dkt. 12. GTLC and the remaining Defendants in this case oppose the Motion. For the reasons outlined below, the Court finds good cause to GRANT the Motion IN PART. The Court finds it necessary and appropriate to sever the claims GTLC asserts against Liberty and transfer those claims to the Southern District of New York. All other claims will remain in the District of Idaho.

## II. FACTS

GTLC manufactures and sells energy efficient light bulbs. Although GTLC is a Georgia corporation, it is "domiciled" in Edina, Minnesota. Dkt. 1, at 2. In addition, "[d]uring the relevant time period, . . . GTLC's managing director resided in Meridian, Idaho." Dkt. 27, at 2. In late 2015, one of GTLC's customers, Menards, Inc., notified GTLC that certain light bulbs GTLC had produced for retail sale (A21 LED light bulbs) were defective. After conducting an investigation, Menards and GTLC determined that the bulbs posed a potential risk of property damage and/or injury to persons. Accordingly, in early 2016, GTLC recalled approximately 400,000 light bulbs.

GTLC incurred over $900,000 of costs and expenses in recalling the light bulbs, including costs incurred to recover the defective light bulbs from Menards. GTLC had a "Product Recall Insurance Policy" through Liberty with a policy period of November 30, 2015, to November 30, 2016 ("the Policy"). The Policy contained the following forum-selection clause:

> CHOICE OF LAW AND FORUM: The construction, validity and performance of this Policy will be governed by the laws of the United States and the State of New York without giving effect to provisions regarding choice of law. All claims and disputes will be brought for adjudication either in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

Dkt. 15-5, at 14.

On February 8, 2016, GTLC made a claim for coverage of the losses it incurred during the recall to Liberty under the Policy. Liberty denied the claim on the ground that the Policy did not cover the incurred loss. The Policy provided "Product Recall Expense

Coverage" but not "Product Recall Liability Coverage," and Liberty claims the losses fall under the later. GTLC disagrees and on October 16, 2017, it filed this suit seeking to recover its losses associated with the recall under the Policy.

GTLC also filed suit against its insurance brokers, Defendants Insure Idaho, LLC ("Insure Idaho") and Crouse and Associates Insurance Services of Northern California, Inc. ("Crouse") (collectively "the Brokers"). It appears Insure Idaho was GTLC's retail broker and Crouse was acting as a wholesale broker when the events that gave rise to this suit took place.

GTLC asserts that it retained Insure Idaho and Crouse to procure an insurance policy that covered both product recall expenses and product recall liabilities. On October 19, 2015, Liberty sent an application for the Policy to Crouse. Thereafter, Crouse and/or Insure Idaho sent this initial application to GTLC. Apparently, this was the incorrect application. Liberty sent a subsequent (correct) application to Crouse/Insure Idaho on November 30, 2015, but the Brokers failed to forward this application to GTLC. On December 1, 2015, GTLC sent the completed initial (incorrect) application to Crouse/Insure Idaho and relied on the Brokers to obtain the proper requested insurance coverage. In mid-December, Liberty sent an insurance binder to Crouse/Insure Idaho, in which it agreed to provide GTLC with $3,000,000 in product recall expense coverage but not product recall liability coverage. Neither of the Brokers forwarded this binder to GTLC. Shortly thereafter Crouse/Insure Idaho instructed Liberty to place coverage per the insurance binder. GTLC did not know that the Brokers had failed to procure coverage

for product recall liability until it received a copy of the Policy on February 16, 2016, after it had made its claim regarding the LED light bulb recall.

GTLC asserts six "counts" in its Complaint: (1) broker malpractice/negligence against Insure Idaho and Crouse; (2) broker malpractice/breach of contract against Insure Idaho; (3) bad faith against Liberty; (4) breach of contract against Liberty; (5) agency; (6) estoppel; and (7) attorney fees.

One month after GTLC filed suit, Liberty filed the pending Motion to Transfer in which it argues, generally, that the Policy contained a forum-selection clause that requires this suit to be tried in the Southern District of New York. On January 16, 2018, after the Motion was fully briefed, the Court held oral argument on the Motion. The following day, the Court issued an Order asking the parties to file simultaneous briefs addressing whether it would be appropriate for the Court to sever the claims against Liberty, transfer those claims to the U.S. District Court for the Southern District of New York, and stay the remaining claims in this Court pending the resolution of the claims against Liberty. Dkt. 34. The Court received briefs from GTLC, Liberty, and Insure Idaho on January 31, 2018. Dkts. 35–37. Crouse then filed a notification that it was joining in the supplemental briefs filed by GTLC and Insure Idaho. Dkt. 38.

### III. ANALYSIS

"[A] forum-selection clause may be enforced by a motion to transfer under [28 U.S.C] § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 575 (2013). In contrast, if venue is "wrong" or "improper" (under 28 U.S.C.

§ 1391)¹ a venue objection is properly brought under 28 U.S.C. § 1406(a) or a Rule 12(b)(3) motion to dismiss for improper venue. *Id.* Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const.*, 134 S. Ct. at 581. "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Id.* However, "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Accordingly, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.*

---

¹ Under 28 U.S.C. § 1391, "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Any venue that does not fall under one of these three categories may be considered "wrong" or "improper."

MEMORANDUM DECISION AND ORDER –5

"First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court . . . should not consider arguments about the parties' private interests," such as convenience for themselves or for witnesses. *Id.* at 582. "[A] district court may consider arguments about public-interest factors," but these will only control in "unusual cases." *Id.* Third, though inconsequential to the present motion, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

After the Supreme Court's decision in *Atlantic Marine*, the process for addressing a motion to transfer to enforce a forum-selection clause has been complicated in cases where, as here, both contracting and non-contracting parties are defendants. Luckily, at least two federal circuit courts have recently addressed this exact situation. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403 (3d Cir. 2017) ("[W]e have need of a separate framework to determine how forum-selection clauses affect the § 1404(a) transfer analysis where both contracting and non-contracting parties are found in the same case and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*."); *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) ("For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls. But not so where, as here, not all parties to the lawsuit have entered into a forum selection agreement."). Both circuits

outlined multi-step analyses courts should conduct before ruling on a motion to transfer. This Court finds the Third Circuit's analysis most applicable to this case because, like here, the Third Circuit in *Howmedica Osteonics* also faced "contention[s] that a forum specified in some of the parties' contracts lack[ed] personal jurisdiction over [one of the defendants] and the assertion that [that defendant was] a 'necessary party.'" 867 F.3d at 403. The Third Circuit "prescribe[d] a four-step inquiry" for courts to follow "in sequence: (1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *Id.* at 403–04. The Court will consider each of these in turn.

### A. The Forum-Selection Clause

At Step One, the Court considers the forum-selection clause at issue. Typically, a court will enforce a forum-selection clause if (1) the forum-selection clause is valid; and (2) the plaintiff's claims fall within the scope of the forum-selection clause. *See Manetti-Farrow*, 858 F.2d at 514–15. The Third Circuit in *Howmedica Osteonics* presumed the validity of the forum-selection clause at issue "because no defendant ha[d] challenged the[ir] validity. 867 F.3d at 399 n.4. Here, there are some challenges to the validity and scope of the forum-selection clause in the Policy, so the Court finds it appropriate to address those challenges now.

#### 1. Whether the forum-selection clause is valid

Under binding Ninth Circuit case law, the Court must start with the presumption that the forum-selection clause is valid. "Forum selection clauses," like the one at issue

here, "are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Despite this presumption, GTLC argues that the forum-selection clause is unenforceable because the Policy is a contract of adhesion. GTLC maintains that it did not have the opportunity to bargain against the forum-selection clause. Rather, it asserts that the terms contained in the Policy were not up for negotiation and GTLC was "powerless to challenge" the forum-selection clause. Moreover, GTLC argues, because the forum-selection clause is overreaching and unenforceable, the presumption in favor of the validity of forum-selection clauses no longer applies. Accordingly, GTLC asserts the Court must deem the forum-selection clause invalid under Idaho's public policy against such clauses.

This argument is unavailing. A contract of adhesion (under Idaho law) is:

> an agreement between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis. Adhesion contracts are not per se unconscionable. Use of an adhesion contract may constitute procedural unconscionability if [Plaintiff] was prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Knezovich v. DirecTV, L.L.C.*, No. 4:17-CV-00165-MWB, 2017 WL 4574964, at *9 (D. Idaho Oct. 13, 2017) (internal quotation marks and citations omitted).[2] GTLC has not identified what factors, timing, or other pressures prevented it from being able to negotiate with Liberty. There is no indication in the record that GTLC possessed less bargaining power than Liberty. Indeed, as Liberty points out, GTLC is a sophisticated international business entity with multiple millions of dollars in annual revenue. Moreover, it employed two sophisticated insurance brokers to obtain insurance coverage on its behalf. Presumably, GTLC could have contracted with another insurance provider on more favorable terms if it did not like the non-negotiable clauses contained in the Policy. For all of these reasons, the Court finds the Policy was not a contract of adhesion.

GTLC has not otherwise argued or established that the forum-selection clause is invalid. Accordingly, the Court concludes that the forum-selection clause in the Policy is valid.

2. <u>Whether the claims at issue fall within the scope of the forum-selection clause</u>

The parties agree that the breach of contract claim against Liberty is subject to the forum-selection clause. However, GTLC and the other Defendants in this case argue that the remainder of the claims asserted are not subject to the forum-selection clause. Federal law applies to the Court's "analysis of the effect and scope of the forum-selection clause." *Manetti-Farrow*, 858 F.2d at 512–13. Generally, "[w]hether a forum selection

---

[2] A similar standard applies under New York law. *See Molino v. Sagamore*, 963 N.Y.S.2d 355, 357 (N.Y. 2013) ("A contract of adhesion contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics." (citation omitted)).

clause applies to [a] claim[] depends on whether resolution of the claim[] relates to interpretation of the contract." *Id.* at 514.

In addition to the breach of contract claim, GTLC asserts one tort claim against Liberty: bad faith. Although this is a tort claim, resolution of the claim will require interpretation of the Policy. Under Idaho law, "[i]n order for a first-party insured to recover on a bad faith claim, the insured must show: '1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages.'" *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1237 (Idaho 2010) (quoting *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 832 (Idaho 2002)).[3] Thus, to succeed on its bad faith claim, GTLC will first have to establish that the Policy in fact covered the claimed losses. This requirement brings the bad faith claim within the ambit of the Policy's forum-selection clause.

Liberty argues that the claims GTLC asserts against Insure Idaho and Crouse also fall within the scope of the forum-selection clause. GTLC asserts two primary claims against the Brokers: (1) broker malpractice/negligence against Insure Idaho and Crouse; and (2) broker malpractice/breach of contract against Insure Idaho.[4] In both of these

---

[3] Under New York law, "no separate cause of action exists in tort for an insured's alleged bad faith in failing to perform its contractual obligations." *Alexander v. Geico Ins. Co.*, 826 N.Y.S.2d 777, 778 (N.Y. 2006).

[4] GTLC asserts three additional claims against all Defendants: one for agency, one for estoppel, and one for attorney fees. It is not clear that all of these claims are cognizable causes of action or

claims, GTLC generally alleges that the Brokers failed to obtain product recall liability insurance in violation of the contractual or professional duties they owed to GTLC. At least part of each of these two claims will require interpretation of the Policy. A court will first need to determine whether the Policy provides product recall liability coverage. If that court finds the Policy does not provide such coverage, that court will need to determine whether the Brokers breached their contractual or professional duties in failing to obtain that coverage for GTLC. Thus, under *Manetti-Farrow*, because the resolution of the claims will require some interpretation of the Policy, the claims fall within the scope of the forum-selection clause. 858 F.2d at 514.

The Brokers argue in response that the forum-selection clause does not apply to them because they were not signatories to the Policy. The Ninth Circuit in *Manetti-Farrow* explained that the signatories to a contract are not the only parties that may be subject to a forum-selection clause; rather, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* at 514 n.5 (quoting *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D. Ill. 1984)). Non-signatories to a contract may be bound by a forum-selection clause so long as "the alleged conduct of the non-parties is . . . closely related to the contractual relationship." *Id.* "Courts considering whether a non-signatory is sufficiently 'closely related' to the contract to be bound by a forum-selection clause must apply a 'common sense, totality of the circumstances approach that essentially inquires into whether, in light of those

---

whether they apply to Insure Idaho/Crouse. However, the parties have not made any arguments as to these claims, so the Court does not address them.

circumstances, it is fair and reasonable to bind a non-party to the forum selection clause."
*Oregon-Idaho Utilities, Inc. v. Skitter Cable TV, Inc.*, No. 1:16-cv-00228-EJL, 2017 WL 3446290, at *9 (D. Idaho Aug. 10, 2017) (citation omitted) (finding forum-selection clause applied to all defendants, not just those that were signatories to the contract at issue). "This approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Id.*

Here, the Brokers' actions were closely related to the contractual relationship between GTLC and Liberty. The Brokers were acting as GTLC's agents in obtaining the disputed insurance and they could foresee that a dispute over the Policy might arise and would be subject to the Policy's forum-selection clause. Therefore, the Court finds all the claims in this case fall within the scope of the forum-selection clause.

Nevertheless, because *Manetti-Farrow* was decided before *Atlantic Marine*, this determination is not dispositive and the Court will proceed through the remaining steps the Third Circuit laid out in *Howmedica Osteonics*.

### B. The Private and Public Interests Relevant to Non-Contracting Parties

At Step Two the Court performs "an independent § 1404(a) analysis of private and public interests relevant to" Insure Idaho and Crouse—the defendants who did not sign the forum-selection clause. "If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there." 867 F.3d at 404.

Relevant private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citation omitted). The relevant public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citation omitted).

The private interests at stake are less than determinative. Insure Idaho is the only Defendant domiciled in Idaho. Crouse is based in California, the Liberty Defendants are based in Massachusetts and New York, and GTLC is based in Minnesota. Besides Insure Idaho, the only other relevant contact with Idaho is through GTLC's managing director, who resided in Meridian, Idaho, at the time Plaintiff initially procured the insurance at issue in this case. Insure Idaho argues that because of this connection "it is obvious a substantial amount of the communications that occurred in relation to Plaintiff's lawsuit occurred in the State of Idaho." The Court is not as convinced. It appears that most of the communications relevant to this case occurred over email. Thus, there is little to convince the court that most of the relevant documents and witnesses are located in Idaho, making

it the optimal district to hear this case. Nevertheless, the Court notes New York is no better. No matter where this case is heard, the majority of the witnesses and interested parties will have to travel great distances, both in preparation for trial and to participate in trial if this case proceeds that far.

The public interests are no more definitive. As a threshold matter, this does not appear to be a "localized controversy" that needs to be decided at home. However, it appears that the tort claims GTLC has asserted against the Brokers are based in Idaho law, which weighs in favor of this Court keeping the case. On the other hand, the contract claim against Liberty may require application of New York law. Nevertheless, the Brokers insist the Idaho-based negligence claims are the heart of this case and should, accordingly, receive more weight.

After full consideration of these factors, the Court finds the private interests of the Brokers together with the public interest only marginally favor this forum. This determination is largely based on the Brokers' stated preference to litigate in this state. Because this Step Two analysis does not point to the same forum as the Step One analysis, the Court proceeds to Step Three.

### C. Threshold Issues Related to Severance

If, as here, "the Step One and Step Two analyses point different ways, then the court considers severance." *Howmedica Osteonics*, 867 F.3d at 404 (citing Fed. R. Civ. P. 21). Under Federal Rule of Civil Procedure 21, a court may order severance *sua sponte*, *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) ("Although neither party has moved for severance in the instant case, the

Court may sever claims sua sponte."), "when it will serve the ends of justice and further the prompt and efficient disposition of litigation," *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) (citation omitted).

"At Step Three, [the Court] considers threshold issues such as the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder, all of which may direct [the] severance analysis." *Howmedica Osteonics*, 867 F.3d at 408. If severance is clearly warranted and "only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends. But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four." *Id.* Of course, the Court must consider whether severance would be disallowed, "such as when a party is indispensable under Federal Rule of Civil Procedure 19(b)." *Id.* "In these cases, the court cannot sever, and the case must continue with all parties present in a forum where jurisdiction and venue are proper as to the indispensable party, which could be either the originating district court or the court to which transfer is sought." *Id.* at 405 (internal citation omitted).

The first threshold issue the Court must address is personal jurisdiction. GTLC argues that the Court should not transfer this case to the Southern District of New York because that Court does not have personal jurisdiction over the Brokers. Nothing in the record indicates that New York has either general or specific personal jurisdiction over the Brokers. Liberty argues that New York has specific personal jurisdiction over the Brokers because of the forum-selection clause in the Policy. The Court disagrees. This

extensive, multi-step analysis would be meaningless if the Court could find personal jurisdiction simply because the non-signatories activities were closely-related to the contract containing the forum-selection clause. The personal jurisdiction inquiry requires much more than the *Manetti-Farrow* inquiry for determining whether non-signatories should be bound by a forum-selection clause. *See* 858 F.2d at 512–14. In sum, the Court finds the Brokers' activities, which were peripheral to the formation of the Policy, are insufficient to establish the "minimum contacts" required to allow New York to exercise personal jurisdiction over the Brokers. *Id.* at 409 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985)). Because the New York court lacks personal jurisdiction over the Brokers, it may be appropriate to sever this case and transfer the claims GTLC asserts against Liberty to the Southern District of New York. *See id.*

In determining whether severance is appropriate, the Court must address the second threshold issue: whether the Brokers are necessary parties. To clarify, the Court considers only whether the Brokers are necessary parties to the contract and bad faith claims GTLC asserts against Liberty.

The Brokers contend that the Court should not sever this case because they are necessary parties to the contract dispute between GTLC and Liberty. "Application of Federal Rule of Civil Procedure 19 determines whether a party is indispensable. The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1154–55 (9th Cir. 2002). "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." *Northrop Corp. v.*

*McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983) (collecting cases). On the other hand, "a party to a contract is [almost always a] necessary [party]" in such a suit. *Dawavendewa*, 276 F.3d at 1157.

The Ninth Circuit has explained that "[a] party may be necessary under Rule 19(a) in three different ways:"

> First, a person is necessary if, in his absence, the court cannot accord complete relief among existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A). Second, a person is necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Third, a person is necessary if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

First, the Brokers are not necessary under rule 19(a)(1)(A) because the Court can "accord complete relief among" GTLC and Liberty. The Brokers are not entitled to any relief in the contract dispute over the Policy coverage nor would they be obligated to pay any damages if GTLC succeeds on these claims.

Second, the Brokers claim they have "an interest in avoiding a determination that the Policy does not cover" GTLC's recall losses. *See Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 978 (D. Minn. 2009). Although this may be a valid interest, "[a]n absent party with an interest in the action is not a necessary party under Rule 19(a) 'if the absent party is adequately represented in the suit.'" *Salt River Project*, 672 F.3d at 1180 (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)). The Court

"consider[s] three factors in determining whether an existing party adequately represents the interests of an absent party:"

> (1) "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments"; (2) "whether the party is capable of and willing to make such arguments"; and (3) "whether the absent party would offer any necessary element to the proceedings that the present parties would neglect."

*Id.* (quoting *Shermoen*, 982 F.2d at 318). Here, it is clear that GTLC will undoubtedly adequately argue, in the Brokers' absence, that the Policy does cover GTLC's claimed recall losses. Moreover, the Court sees no other element that the Brokers would bring to the adjudication of the Policy coverage that GTLC and Liberty would neglect. *See Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d at 978 (finding insurance broker was not a necessary party to contract action because, although their interest "may eventually diverge," insurance broker and insurance purchaser "presently share a strong interest in obtaining a declaration that the Policy covers the Products Litigation"). Thus, the Court finds GTLC would adequately represent the Brokers' asserted interest.

Third, the Brokers and GTLC argue that severing this case may create inconsistent judgments as the New York court and this Court could reach different conclusions about the Policy coverage, and the doctrines of res juticata may not apply to prevent these inconsistent results. The Ninth Circuit has explained that "[i]nconsistent obligations," as required by Rule 19, "are not . . . the same as inconsistent adjudications or results." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (citation omitted). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order

concerning the same incident." *Id.* "Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Id.* Here, there is only a risk of inconsistent adjudications, which is not sufficient to find the Brokers to be necessary parties under Rule 19. *See Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d at 978.

Because the Court finds the Brokers are not necessary parties to the contract dispute between GTLC and Liberty under Rule 19, severance is permissible. After conducting the above three-step analysis, the Court finds severance is warranted to honor the forum-selection clause in the Policy, but to permit GTLC to sue the Brokers in a forum that has personal jurisdiction over the Brokers. In such a case, the Third Circuit directs the Court to end its inquiry. *See Howmedica Osteonics*, 867 F.3d at 404–05 ("In such cases, the court should sever and transfer claims as appropriate to remedy jurisdictional and procedural defects. If only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends.").

The parties in this case have spent a significant portion of their briefs discussing efficiency and prejudice. The Court acknowledges the value in avoiding duplicative litigation. The Court also recognizes that GTLC and the Brokers may suffer some prejudice if the Court severs this case. However, because the Court's inquiry ends at Step Three, the Court need not dwell on these factors any longer. The law directs the Court to honor and enforce a valid forum-selection clause in all but the most exceptional circumstances; this is not one of those exceptional circumstances. *Id.* at 405 ("Only if it

determines that the strong public interest in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause."). At the same time, the Court cannot simply send this whole case to a forum that would not have personal jurisdiction over all of the defendants. Therefore, the only solution is to sever the claims GTLC has asserted against Liberty, transfer those claims to the Southern District of New York, and retain the remaining claims GTLC has asserted against the Brokers. The Court will not sua sponte stay the litigation remaining in this District; however, the Court will give due consideration to such a motion if any of the parties find it appropriate.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Liberty's Motion to Change Venue (Dkt. 12) is GRANTED IN PART AND DENIED IN PART, consistent with the above opinion.
2. The claims GTLC has asserted against Liberty are SEVERED from the remaining claims in this case. The claims GTLC has asserted against Liberty are TRANSFERRED to the United States District Court for the Southern District of New York. The claims GTLC has asserted against Insure Idaho and Crouse shall remain in this District.

DATED: February 26, 2018

David C. Nye
U.S. District Court Judge