UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREEN TECHNOLOGY LIGHTING CORP., a Georgia Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>INSURE IDAHO, LLC, an Idaho Limited Liability Company; and CROUSE AND ASSOCIATES INSURANCE SERVICES OF NORTHERN CALIFORNIA, INC., a California corporation.<br><br>                Defendants. | Case No. 1:17-cv-00432-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Crouse and Associates Insurance Services of Northern California, Inc.'s ("Crouse") Motion for Attorney Fees. Dkt. 114. Crouse requests an initial $113,002.50 in attorney's fees and an additional $8,020.00 in attorney's fees accrued in defending its present Motion. Dkt. 114-1, at 15. Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, the motion for an award of attorneys' fees is GRANTED in the amount of $121,022.50.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

The Court has already summarized the factual background of this case and incorporates that background by reference. *See* Dkt. 39, at 2–4. For context, however, the Court provides a brief summary.

Green Technology Lighting Corporation's ("Green Tech") Complaint involved an insurance policy it purchased from Liberty Surplus Insurance Corp. and Liberty Insurance Underwriters, Inc. (collectively "Liberty") under the guidance of Liberty's insurance broker, Crouse and Insure Idaho, LLC. Dkt. 1. The policy Green Tech purchased was a product recall *expense* policy, but not a product recall *liability* policy. After the policy was purchased, Green Tech manufactured, sold, and subsequently recalled defective light bulbs. The subtle difference in the purchased expense policy versus a liability policy culminated in Green Tech being denied coverage for the costs it incurred in recalling the defective light bulbs, resulting in losses of over $900,000.

On October 16, 2017, Green Tech filed a complaint against Liberty, Insure Idaho, and Crouse, alleging in relevant part that Crouse was negligent in committing broker malpractice and, as an agent of Liberty, was jointly and severally liable with Insure Idaho and Liberty for the damages caused by Liberty's denial of coverage for Green Tech's recall. Dkt. 1. Liberty is no longer a party to this suit, and Insure Idaho is not involved in the instant Motion.

On March 31, 2023, the Court issued summary judgment in favor of Crouse. Dkt.

107.[1] On December 29, 2023, Crouse timely moved for attorney fees under Rule 54(d)(2) of the Federal Rules of Civil Procedure and Idaho Code § 12-120(3). Dkt. 114. Green Tech objects to an award of attorney's fees to Crouse under § 12-120(3), contending there was no commercial transaction between Green Tech and Crouse. Dkt. 120.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 54(d)

Under the Federal Rules of Civil Procedure, a party may move for attorney's fees if the motion: (1) is filed no later than 14 days of entry of judgment; (2) specifies the judgment and statute, rule, or other grounds entitling them to the award; (3) states the amount sought or provides a fair estimate of it; and (4) discloses, if ordered by the court, the terms of the agreement for fees and services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)–(iv). As to the second requirement, federal courts sitting in diversity apply state law when determining whether a party is entitled to any award. *Safeco Ins. Co. of Ill. v. LSP Products Grp., Inc.*, 659 F. Supp. 3d 1131, 1135 (D. Idaho 2023). As noted, the state law applicable to Crouse's Motion is Idaho Code § 12-120(3).

#### B. Idaho Code § 12-120(3)

Under Idaho Code § 12-120(3), the Court must award reasonable attorney's fees to the prevailing party in a civil action to recover on a contract relating to the purchase or sale of merchandise, or in any other commercial transaction unless otherwise provided by law. The statute defines a commercial transaction as "all transactions except [those] for personal

---

[1] Although Green Tech appealed the Court's Summary Judgment Decision (Dkt. 115) the Ninth Circuit recently issued a decision affirming the Court in all respects. Dkt. 123.

or household purposes." *Id.* To determine if attorney's fees should be awarded pursuant to § 12-120(3), the Court must analyze: (1) if there is a commercial transaction that is integral to the claim; and (2) if the commercial transaction [is] the basis upon which recovery is sought. *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 36 P.3d 218, 223 (Idaho 2001). "In other words, the relevant inquiry is whether the commercial transaction constituted 'the gravamen of the lawsuit.'" *Garner v. Povey,* 259 P.3d 608, 615 (Idaho 2011) (citing *Great Plains*, 36 P.3d at 224).

### C. The Lodestar Method

"After establishing that a plaintiff is entitled to attorney's fees, the Court must calculate a reasonable fee award." *Animal Legal Def. Fund v. Otter*, 2016 WL 2910266, at *2 (D. Idaho May 18, 2016). To calculate a reasonable fee award, Courts in the Ninth Circuit use the two-step "lodestar method." *Mares-Orozco v. Guzman*, 2023 WL 5179674, at *4 (D. Idaho Aug. 10, 2023) (citing *Edmo v. Idaho Dep't of Correction*, 2022 WL 16860011, at *2 (D. Idaho Sept. 30, 2022)). The lodestar method multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). To establish the requested hours and rate are reasonable, the "burden is on the party seeking the fee award and can be carried by submitting evidence and documents supporting the hours worked." *Id.* (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)).

### IV. DISCUSSION

### A. Commercial Transaction under Idaho Code § 12-120(3)

#### 1. FRCP 54(d)

Crouse has satisfied the requirements of Rule 54(d). The Court granted summary judgment in favor of Crouse on December 21, 2023, and Crouse filed the instant Motion on December 29, 2023, falling within the 14-day requirement. The Motion specified both the Judgement— summary judgement at docket 107— and statute— Idaho Code § 12-120(3)— entitling Crouse to an award. Crouse also provided documentation as to the rate and amount sought with detailed time entries.[2] Therefore, Fed. R. Civ. P. 54(d)(2)(B) is satisfied.

### 2. Idaho Code § 12-120(3)

To begin, the Court finds that the procurement of business insurance in this suit qualifies as a commercial transaction under the definition provided in Idaho Code § 12-120(3). A transaction is "the act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract." *Transaction*, *Black's Law Dictionary* (12th ed. 2024). "'Insurance policies are a matter of contract between the insurer and the insured.'" *State Farm Mut. Auto. Ins. Co. v. Clark*, 626 F.Supp.3d 1163, 1173 (D. Idaho Sept. 7, 2022) (citations omitted). Idaho Code § 12-120(3) also applies "in any other commercial transaction" besides those specifically enumerated, and it defines a commercial transaction as any transaction that does not have a personal or household purpose. Crouse's actions in procuring insurance for Green Tech constituted a commercial

---

[2] Crouse also requested an additional sum for any fees accrued in the event it would need to defend its Motion. Crouse reiterated the request in its reply; however, it did not provide a fair estimate of the costs that were accrued as part of that briefing. Dkt. 121. After being invited to do so by the Court, Crouse did supply that information (Dkt. 125), and the Court will consider the additional amount in the award.

MEMORANDUM DECISION AND ORDER - 5

transaction as is thus covered under Idaho Code § 12-120(3).[3]

Even so, it does not appear that Green Tech's opposition to the award of attorney's fees is strictly centered around whether there was a commercial transaction in this case. *See* Dkt. 120, at 4 ("Even assuming *arguendo* that procuring business insurance constitutes a commercial transaction, the statute still requires that the actions be based on an agreement between the parties."). Rather, Green Tech asserts that there was no commercial transaction which would entitle a party to fees under Idaho Code § 12-120(3) because there was no contractual relationship between Green Tech and Crouse—as evidenced by the Court's prior holding on summary judgement. *See* Dkt. 107, at 17.

But this is not exactly accurate. In its prior order, the Court held Crouse had assumed a limited affirmative duty to Green Tech by requesting coverage from Liberty in 2014 on Green Tech's behalf, but such a duty would not carry on a year later. *Id.* at 17. Without Crouse assuming an affirmative duty to Green Tech in 2015, there could be no breach of that duty. *Id.* Thus, the Court's prior ruling does not affect the instant question as directly as Green Tech asserts. A mere attempt by Green Tech to recover directly from Crouse on a commercial transaction, where the commercial transaction is the gravamen of the claim, entitles Crouse to an award of attorney's fees under Idaho Code § 12-120(3).

The Court must analyze each claim against a defendant individually to ascertain whether a commercial transaction is the gravamen of that claim. *Alcala v. Verbruggen*

---

[3] Crouse was "dealing" directly with Green Tech to sell it Liberty's insurance policy. As will be discussed hereinafter, even though the contract was ultimately between Liberty and Green Tech, this dealing was a commercial transaction because Crouse was agreeing to provide services directly to Green Tech, namely, selling Green Tech business insurance from Liberty. Additionally, Green Tech attempted to recover from Crouse on the insurance policy itself, which was a commercial transaction between Green Tech and Liberty.

MEMORANDUM DECISION AND ORDER - 6

*Palletizing Solutions, Inc.*, 531 P.3d 1085, 1113 (Idaho 2023). Contrary to Green Tech's assertions, "[n]either a contract, nor a commercial transaction *in fact* are necessary predicates to awarding attorney fees . . . under § 12-120(3)." *Id.* (citing *Blimka v. My Web Wholesaler, LLC*, 152 P.3d 594, 599 (2007) and *Garner*, 259 P.3d at 616). Rather, where a party attempts to recover in a commercial transaction, regardless of whether there is proof that the commercial transaction actually occurred, a prevailing party may recover fees. *Garner*, 259 P.3d at 615 (quoting *Farmers Nat. Bank v. Shirey*, 878 P.2d 762 (1994)).

Crouse is correct that Green Tech levied three claims against Crouse in this lawsuit: (1) broker malpractice/negligence, (2) agency, and (3) estoppel. Dkt. 1. As the Court must take each claim one by one, it is most straightforward to begin with the specific language in the Complaint involving agency and estoppel, as both claims frame Green Tech's negligence claim.

Addressing estoppel, Green Tech alleged, "Defendant [Liberty] is an insurance company who licensed their [agent…Crouse] *to sell their policies*. Defendants should be estopped from denying coverage for the . . . recall." Dkt. 1, at ¶ 72. And, discussing agency, Green Tech alleged, "Crouse [is a] professional and licensed insurance agent and Defendant [Liberty] is an insurance company who licensed their [agent Crouse] *to sell their policies . . . .* Defendants are jointly and severally liable for Plaintiff's damages." *Id.* at ¶¶ 67, 68.

It is abundantly clear from these allegations that Green Tech sued Crouse as a participant in the commercial transaction at issue, and as the seller of Liberty's policies on Liberty's behalf. Green Tech attempted to recover from Crouse jointly and severally with

MEMORANDUM DECISION AND ORDER - 7

Liberty for Crouse's alleged failure to arrange for Green Tech's purchase of the correct policy. A commercial transaction is the gravamen of the agency and estoppel claims against Crouse because Green Tech alleged that Crouse failed to sell it the proper policy as an intermediary with Liberty, and that Crouse and Liberty are equally responsible for failing to provide Green Tech with the appropriate policy. The Court finds a commercial transaction is the gravamen of both the estoppel and agency claim Green Tech made against Crouse.

Turning next to its negligence claim, Green Tech alleged Crouse "failed to procure Product Recall Liability Coverage for [Green Tech]," and "made no attempt to procure coverage on behalf of [Green Tech] for product recall liabilities." Dkt. 1, at 7–8. Out of the three claims that Green Tech levied at Crouse, it is potentially the most difficult to establish that a commercial transaction was the gravamen of the negligence claim. However, the aforementioned language indicates that there would be no negligence claim had Crouse fulfilled its role *in the commercial transaction* that Green Tech expected it to perform. The very duty Green Tech alleged Crouse failed to fulfill was that of a seller in a commercial transaction.

While it is true that Green Tech ultimately purchased an insurance policy from Liberty, this case is comparable to *American West Enterprises, Inc. v. CNH, LLC*. In *American West*, the plaintiff purchased a tractor from an authorized dealer, and when the tractor's engine needed replaced, the authorized dealer coordinated with the defendant, who was a manufacturer, to get replacement parts. 316 P.3d 662, 665 (Idaho 2013). The replacement engine was faulty, and the defendant manufacturer refused to reimburse the

MEMORANDUM DECISION AND ORDER - 8

Case 1:17-cv-00432-DCN   Document 127   Filed 11/13/24   Page 9 of 14

plaintiff, claiming it only had a contract with the authorized dealer, not the plaintiff. *Id.*

The plaintiff sued the defendant manufacturer on the commercial nature of a transaction (breach of an implied warranty), claiming it was a third-party beneficiary of the direct commercial agreement between the authorized dealer and the manufacturer, and also made a claim for attorney's fees under Idaho Code § 12-120(3). After the court held there was no contract between the plaintiff and the defendant manufacturer, it still found the defendant manufacturer was entitled to an award of fees under Idaho Code § 12-120(3) because, while the parties did not deal "directly" with each other, the nature of the claim was still a commercial transaction. *Id.* at 671.

Here, even though one of Green Tech's claims against Crouse was for negligence instead of breach of contract, the negligence claim essentially acted as a breach of contract claim. That is, because Crouse did not fulfill its end of the bargain by completing the transaction with Liberty as directed by Green Tech, Green Tech could not receive the benefit of its insurance policy. Green Tech thus attempted to recover from Crouse due to a mishandled commercial transaction. In requesting that Crouse be estopped from denying payout of the insurance policy, Green Tech sought to hold Crouse directly responsible for the ultimate agreement between Green Tech and Liberty.[4] Green Tech effectively claimed

---

[4] It is true that Idaho Code § 12-120(3) is not applicable where "'the commercial transaction is between parties only indirectly related, i.e. [where] there was no [alleged] transaction between the parties[.]'" *Alcala*, 531 P.3d at 1113–14 (quoting *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 36 P.3d 218, 224 (2001)). In reality, Green Tech alleged there were four parties to the transaction at issue: Liberty, Crouse, Insure Idaho, and Green Tech. Crouse had an agreement with Liberty to sell its policies to buyers. Insure Idaho had an agreement with Green Tech to find the insurance policy and provider that Green Tech needed. Insure Idaho collaborated with Crouse to provide Green Tech with Liberty's insurance coverage. Green Tech

(continued)

it was a third-party beneficiary to a direct commercial agreement between Crouse and Liberty, and it went on to request fees under Idaho Code§ 12-120(3). Dkt. 1, at ¶ 65, 11, at ¶ 75. Therefore, this case parallels *American West Enterprises*, and an award of attorney's fees is proper under Idaho Code § 12-120(3).

## B. Lodestar Analysis

Because Crouse is entitled to attorney's fees under Idaho Code § 12-120(3), the Court must assess the "lodestar" amount, or the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, to reach an appropriate final award.

### 1. Reasonable Rates

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Within the relevant community, the court considers the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).

Here, Crouse paid between $145 and $200 per hour for its attorneys, and between $85 and $90 per hour for the services of a paralegal. Three different attorneys participated

---

would (most likely) not have purchased a policy from Liberty had Crouse not facilitated such a purchase as one of the intermediaries. So, while Green Tech was the insurance policy holder and Liberty was the insurance provider, strictly speaking, such a relationship would not have occurred without Crouse's direct participation through facilitating the transaction. Therefore, while not a traditional buyer-seller situation, and even though the Court ultimately held Crouse had no contract with Green Tech, Green Tech based its complaint on alleged transactions of a commercial nature between Crouse and Green Tech.

in representing Crouse, and the higher rates charged coincided with the experience and expertise of each attorney. Crouse has provided evidence that the Court has approved similar hourly rates in comparable cases. Dkt. 114-1, at 13–14. The Court agrees with Crouse's assertion that the rates charged in this case are equal to, and often less than, other rates that the Court has recently approved. *See, e.g.*, *Mares-Orozco v. Guzman*, 2023 WL 5179674, at *5 (D. Idaho 2023) (finding rates of $275-300 for attorneys and $140-$215 for paralegals appropriate); *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2021 WL 2444157, at *15 (D. Idaho 2021) (approving a wide range of fees from $280-$600 for attorneys and $220-$370 for paralegals based on experience and the relevant markets). Stacey Beaumont submitted an affidavit that the rates requested in this case are reasonable in the Boise market.[5] Dkt. 114-2. The Court can confirm they are. Additionally, Green Tech has not challenged the reasonableness of the rate whatsoever. For these reasons, the Court finds Crouse's requested hourly rates are reasonable.

### 2. Reasonable Hours Expended

A court may exclude from the fee calculation hours that were not "reasonably expended," such as hours which are "excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The fee applicant bears the burden of proof and "can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Fisher v. SJB-P.D. Inc.*,

---

[5] Beaumont is one of the attorneys for Crouse. She is experienced in litigating civil cases in Idaho and is familiar with the prevailing rates charged and types of fees incurred in civil litigation in Idaho. She based her conclusion on her own experience and conversations with other attorneys with similar practices in the area. She also compared the fees charged with similar cases in the District of Idaho.

214 F.3d 1115, 1121 (9th Cir. 2000) (cleaned up). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, the parties do not dispute the number of hours expended by Crouse's attorneys,[6] and Crouse has provided billing records together with the general subject matter of each time expenditure. Dkt. 114-3; Dkt. 125. Thus, the Court finds the lodestar figure of $121,022.50 is presumptively reasonable, absent any adjustments.

### 3. Kerr Adjustments

As a final step in the lodestar method, the Court must measure the lodestar figure against the factors—originally laid out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)—to determine whether an adjustment to the lodestar figure is necessary. *Mares-Orozco*, 2023 WL 5179674, at *5. The "Kerr factors" include the: "(1) time limitations imposed by the client or the circumstances, (2) the 'undesirability' of the case, (3) the nature and length of the professional relationship with the client, and (4) awards in similar cases." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (cleaned up); *Kerr*, 526

---

[6] The Court would also like to note that Crouse originally requested $113,002.50 and "a greater sum if this motion is contested." Dkt. 114-1, at 15. When the Court requested supplemental documentation from Crouse giving an exact amount of this greater sum, Crouse provided time entries dated prior to the submission of the original Motion for Attorney's Fees filed on December 29, 2023 (Dkt. 114). Moreover, Green Tech did not oppose the Motion until January 19, 2024, (Dkt. 120), and Crouse's supplement and corresponding requests for fees largely describes fees incurred from December 21, 2023, to January 16, 2024. Dkt. 125-2, at 2–15. The Court is unsure why Crouse did not submit all of the fees incurred up to December 29, 2023, in its original Motion, but without opposition from Green Tech, it is inclined to award all attorney's fees requested, including those requested in the supplement. While unconventionally requested, the lodestar analysis performed above applies just as equally to the fees requested between December 21, 2023, and January 16, 2024.

F.2d at 70. "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (cleaned up). "The burden of proving that such an adjustment is necessary" is on the party seeking the adjustment. *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

Here, neither party has requested any adjustment from the lodestar figure nor pled any facts that would indicate such an adjustment would be appropriate. While this case has been lengthy, there are no facts to suggest that the burden of representation fell outside of the relative norm. There is also no indication that there is a unique professional relationship between Crouse and its attorneys. In addition, the lodestar amount of $121,022.50 for 838.5 hours of work is quite low in comparison with awards in similar cases. *See, e.g., Mares-Orozco*, 2023 WL 5179674, at *6 (finding an award of $113,805.50 in fees for 373.10 hours of work fair in comparison to similar cases).

In short, under the totality of circumstances, including the overall reasonableness of both the rates and hours accounted for, the fact that neither party requested an adjustment, and the *Kerr* factors outlined above, the Court finds that an adjustment to the lodestar amount is not necessary in this case.

### V. CONCLUSION

Green Tech sought to recover on three claims against Crouse, and a commercial transaction was the gravamen of all three claims. As such, Crouse is entitled to an award of attorney's fees under Idaho Code § 12-120(3). Under the lodestar method, the reasonable amount of attorney's fees in this case is $121,022.50. The Court will grant Crouse's Motion for Attorney Fees for this amount.

MEMORANDUM DECISION AND ORDER - 13

## VI. ORDER

The Court **HEREBY ORDERS**:

1. Crouse's Motion for Attorney's Fees is GRANTED as outlined above.

2. The Court awards Crouse attorney's fees in the amount of $121,022.50.

3. Green Tech will have thirty (30) days from the filing of this Order to comply.

DATED: November 13, 2024

_____
David C. Nye
Chief U.S. District Court Judge